Anthony HARRISON and Janet Harrison

v.

WYETH LABORATORIES DIVISION
OF AMERICAN HOME PRODUCTS
CORPORATION, et al.

Civ. A. Nos. 79–2788, 79–2953, 79–3216, 79–4053, 79–4118, 79–4238, 79–4438, 80–0374, 80–0673, 80–1027, 80–1429, 80–1221, 80–1426, 80–1631 and 80–1990.

United States District Court,
E. D. Pennsylvania.

Feb. 19, 1980.

On Motion for Relief July 1, 1980.

Gerald C. Sterns, San Francisco, Cal., and Hamilton, Darmopray & Malloy by Joseph A. Malloy, Philadelphia, Pa., for plaintiffs.

Pepper, Hamilton & Scheetz by Edward W. Madeira, Jr., and Murray S. Levin, Philadelphia, Pa., for defendant.

## MEMORANDUM OPINION AND ORDER

WEINER, District Judge.

Plaintiffs in these actions are all citizens and residents of the United Kingdom. They each allege that they purchased oral contraceptives within the United Kingdom, used them in accordance with the directions and instructions, and as a direct and proximate result of such usage suffered injury, damages, and/or death. Presently before this Court is the defendant's motion to dismiss[1] on grounds of forum non conveniens. For the reasons to follow, the motion is granted, subject to the defendant's agreement to the conditions specified in this memorandum and order.

### I

Plaintiffs allege that defendant has its principle place of business in Pennsylvania, and is engaged in the development, testing, manufacture, production, sale, marketing, promotion and advertising of the oral contraceptives Ovram-30, Ovram, and Ovranette.

Plaintiffs allege that defendant caused the marketing, sale and distribution of the drugs in the United Kingdom and either actually produced and manufactured the drugs marketed in the United Kingdom themselves, or did so through others by agency, license, or otherwise. Plaintiffs allege that defendant was negligent in its conduct of these activities, and in its failure to give reasonable or adequate warning concerning the serious risk of which it had knowledge associated with the use of these drugs.

---

1. The motion was filed on behalf of the defendant in Civil Actions C.A. 79–2788, C.A. 79–2953, and C.A. 79–3216, which by stipulation and order are being treated as consolidated actions for the purpose of pre-trial proceedings only. By stipulation and order, defendant's motion to dismiss is being treated as having been filed as well in C.A. 79–4053, C.A. 79–4118, C.A. 79–4238 and C.A. 80–374.

Defendant has submitted the affidavit of David Gibbens, the Secretary of John Wyeth & Brothers Limited (JWB), incorporated under the laws of the United Kingdom, a wholly owned subsidiary of American Home Products Corporation (AHPC). According to the affidavit, JWB is a sub-licensee of AHPC and pays royalties to AHPC for use of synthetic progestrogens, for which AHPC holds the exclusive license, in the contraceptives it manufactures, including Ovram-30, Ovram, and Ovranette. The affidavit states that all three of the drugs are manufactured, packaged and labelled in the United Kingdom by, or on behalf of, JWB for distribution in the United Kingdom and Ireland. The affidavit further states that JWB received product licenses under the laws of the United Kingdom authorizing distribution and marketing of the drugs. Defendant argues that the litigation could and should more conveniently and appropriately be brought in the United Kingdom, as that country is the domicile of the plaintiffs, and the situs of the licensing, manufacture, packaging, prescription, purchase, and ingestion of the drugs. Defendant contends that the activities complained of did not occur in Pennsylvania, and Pennsylvania has no legitimate interest in regulating the conduct of its citizens beyond its borders. Defendant reasons that the marketing decisions were made in light of British regulation and law, and should be judged by the standards of the community affected by the allegedly tortious activity. Thus they argue that the more appropriate forum is a court in the United Kingdom.

Plaintiffs argue[2] that while it may well be true that the particular drugs which caused the injury in these cases were actually manufactured and sold in the United Kingdom, such facts are not dispositive of its claim. Plaintiffs contend that the alleged tortious conduct consisted of *marketing* the drugs and placing them in the stream of commerce with knowledge that the warning accompanying the drugs was inadequate, thus creating an unreasonable risk of harm, irrespective of where the drugs were sold. Plaintiffs claim that the fundamental manufacturing and marketing decision, conceiving the formula for the drugs, the knowledge of the risks involved, the alleged withholding of adequate warning, and the distribution of the drugs, all were made by defendant in Pennsylvania. Plaintiffs argue that the alleged tortious acts occurred in Pennsylvania, and that Pennsylvania has an interest in and direct concern with the safety of products which emanate from its borders and with conduct which occurs within Pennsylvania which may cause harm to others, regardless of where that harm may have occurred. Plaintiffs thus contend that under Pennsylvania choice of law rules, the law of Pennsylvania would apply in this case.

## II

Under the doctrine of forum non conveniens a Court may resist imposition upon its jurisdiction even when jurisdiction is authorized by the letter of a general venue statute. *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 507, 67 S.Ct. 839, 842, 91 L.Ed. 1055 (1947). The doctrine presupposes at least two forums in which the defendant is amenable to process and furnishes criteria for choice between them. *Id.* Where the more convenient forum is in a foreign country, the traditional forum non conveniens remedy of dismissal is proper. *DeMateos v. Texaco, Inc.*, 562 F.2d 895, 899 (3rd Cir. 1977), *cert. denied*, 435 U.S. 904, 98 S.Ct. 1449, 55 L.Ed.2d 494 (1978). Determination as to whether to dismiss on grounds of forum non conveniens is entrusted to the sound discretion of the trial court. *Paper Operations Consultants Intern., Ltd. v. S. S. Hong Kong Amber*, 513 F.2d 667 (9th Cir. 1975).

Important considerations are the relative ease of access to sources of proof, availability of compulsory process for attendance of unwilling, and the cost of obtaining, willing witnesses; . . . and all other

---

2. Plaintiffs' position is outlined in their letter brief to the court dated November 3, 1979.

Plaintiffs have filed no formal memorandum in opposition to defendant's motion to dismiss.

practical problems that make trial of a case easy, expeditious and inexpensive. There may also be questions as to the enforcibility of a judgment if one is obtained.

*Gulf Oil Corp. v. Gilbert*, 330 U.S. at 508, 67 S.Ct. at 843.

Furthermore,

> [t]here is a local interest in having localized controversies decided at home. There is an appropriateness, too, in having the trial of a diversity case in a forum that is at home with the state law that must govern the case, rather than having a court in some other forum entangle problems in conflict of laws, and in law foreign to itself.

*Id.* at 508, 67 S.Ct. at 843.

### A.

The local interest in having this localized issue decided at home is strong. A Court versed in the law that must govern the case and familiar with the people and the community in which the law is to govern, is better able to establish the appropriate legal standards and apply them to the facts of the case.

■ After careful consideration we have decided that these cases would be more conveniently and appropriately heard in the courts of the United Kingdom. Even assuming arguendo that all production and marketing decisions were made by defendant in Pennsylvania and not by JWB in the United Kingdom, Pennsylvania's interest in the regulation of the *conduct* of drug manufacturers and the safety of drugs produced and distributed *within* its borders does not extend so far as to include such regulation of conduct on drugs produced or distributed in foreign countries. Questions as to the *safety* of drugs marketed in a foreign country are properly the concern of that country; the courts of the United States are ill-equipped to set a standard of product safety for drugs sold in other countries. The issues raised here concern the knowledge, if any, of an allegedly unreasonable risk, and the sufficiency of the warning of that risk to users of the product. Both the British

and the American governments have established requirements as to the standards of safety for drugs and the adequacy of any warnings to be given in connection with its use. Each government must weigh the merits of permitting the drug's use and the necessity of requiring a warning. Each makes its own determination as to the standards of degree of safety and duty of care. This balancing of the overall benefits to be derived from a product's use with the risk of harm associated with that use is peculiarly suited to a forum of the country in which the product is to be used. Each country has its own legitimate concerns and its own unique needs which must be factored into its process of weighing the drug's merits, and which will tip the balance for it one way or the other. The United States should not impose its own view of the safety, warning, and duty of care required of drugs sold in the United States upon a foreign country when those same drugs are sold in that country. Here, that foreign country is the United Kingdom, a society in some aspects similar to our own in a standard of living, beliefs, and values. At issue here is, among other things, the delivery of medical care and drugs, oral contraceptives, a category of drugs long considered controversial in the United States for reasons of health and morals. It is therefore tempting for us to believe that our standards of product safety and care, if more stringent than their own, ought to apply to the British in order to afford the British people a higher degree of protection from possibly harmful products.

The impropriety of such an approach would be even more clearly seen if the foreign country involved was, for example, India, a country with a vastly different standard of living, wealth, resources, level of health care and services, values, morals and beliefs than our own. Most significantly, our two societies must deal with entirely different and highly complex problems of population growth and control. Faced with different needs, problems and resources in our example India may, in balancing the pros and cons of a drug's use, give different

weight to various factors than would our society, and more easily conclude that any risks associated with the use of a particular oral contraceptive are far outweighed by its overall benefits to India and its people. Should we impose our standards upon them in spite of such differences? We think not.

Furthermore, *fairness to the defendant* mandates that defendant's conduct be judged by the standards of the community affected by its actions.

In addition, defendant claims to have complied by the dictates of the British government's requirements as to drug safety and warnings standards. While it may be true in most states in this country that compliance with the minimum government requirements does not necessarily constitute compliance with the duty of care which a manufacturer owes users of its products, it is manifestly unfair to the defendant, as well as an inappropriate usurpation of a foreign court's proper authority to decide a matter of local interest, for a court in this country to set a higher standard of care than is required by the government of the country in which the product is sold and used.

 Finally, under Pennsylvania choice of law rules, it is clear that the applicable law here is that of the United Kingdom. A federal court sitting in a diversity case must apply the choice of law rules of the forum state. *Klaxon Co. v. Stentor Electric Manufacturing Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). Pennsylvania has adopted the "most significant relationship" test for determining which law to apply. *Griffith v. United Air Lines, Inc.*, 416 Pa. 1, 203 A.2d 796 (1964). This flexible approach permits analysis of the policies and interests underlying the particular issue before the court, and gives the place having the most interest in the problem paramount control over the legal issues arising out of a particular factual context and thereby allows the forum to apply the policy of the jurisdiction most intimately concerned with the outcome of the particular litigation. 416 Pa. at 21–22, 203 A.2d at 805–806. We have already shown that the

United Kingdom, and not Pennsylvania, has the greater interest in the control of drugs distributed and consumed in the United Kingdom. Hence, it is the jurisdiction most intimately concerned with the outcome of this litigation and its law would be applied even if these cases were to be heard in this forum.

## B.

We turn now to consideration of the availability of an alternative forum, and to practical questions of process, expense, production of witnesses and evidence, and enforcibility of judgment.

 Defendant argues that the alternative forum prerequisite is met by the availability of an action in the United Kingdom against AHPC's subsidiary, JWB, and that even if defendant is not subject to United Kingdom jurisdiction, the availability of JWB makes it unnecessary for plaintiffs to include defendant in any action against JWB. We do not agree. We are not sure if a suit against the subsidiary, JWB, is sufficient to constitute an adequate alternative forum for this suit, brought by plaintiffs against this defendant. As we have explained, this action is more appropriately heard and decided by a British court. But in dismissing this action as a matter of convenience, we should not insulate this defendant from judicial determination of its alleged liability and from the consequences of its actions by placing it beyond the reach of the plaintiffs and of the courts of this or any other jurisdiction. An action against JWB may or may not fully protect plaintiffs as regards their claims against defendant for the alleged tortious conduct of defendant.

Defendant itself recognizes the need for the availability of an alternative forum before there may be a dismissal on forum non conveniens grounds. Indeed, defendant advances the argument that an alleged lack of foreign jurisdiction over the defendant is not an obstacle to dismissal because courts may deal with the alternative forum prerequisite to a forum non conveniens dis-

missal by conditioning such dismissal upon the defendant's consent to foreign jurisdiction. Such a conditioned dismissal was ordered in *Reyno v. Piper Aircraft Co.*, 479 F.Supp. 727 (M.D.Pa.1979), a case brought to our attention by defendant.

Defendant has also brought to our attention the case of *Dahl v. United Technologies Corp.*, 472 F.Supp. 696 (D.Del.1979). In dismissing on the ground of forum non conveniens, Chief Judge Latchum conditioned his order on: (1) Defendant's consent to suit and to accept process in a foreign jurisdiction (Norway) in any civil actions instituted by plaintiffs on their claims before the applicable statute of limitations; (2) Defendant's agreement to make available, at its own expense, any documents or witnesses within its control that are needed for fair adjudication of any action brought in Norway by the plaintiffs on their claims; (3) Defendant's consent to pay any judgment, if any, which may be rendered against it in Norway in any civil action brought by plaintiffs on their claims.

In order to preclude the possibility that defendant would be effectively insulated from plaintiff's claims if we dismiss this case on grounds of forum non conveniens, we will condition such dismissal on defendant's consent to similar requirements. As we have noted, defendant has itself raised the prospect of so conditioning our dismissal. Accordingly, defendant must agree to submit to the jurisdiction of the courts of the United Kingdom in any civil action timely instituted there against JWB on the claims alleged herein. In addition, important evidence, both documents and witnesses, may be located in Pennsylvania and under the control of defendant. This evidence must be available to plaintiffs and to the courts in any action brought on these claims in the United Kingdom if the courts of the United Kingdom are to constitute an alternative forum in which plaintiffs can receive a fair adjudication. Accordingly,

defendant must agree to make available, at its own expense, any documents, witnesses, or other evidence under its control that are needed for fair adjudication of any actions brought in the United Kingdom by plaintiffs on their claims. Finally, so that any judgment rendered against defendant in the United Kingdom on plaintiffs' claims will have effect, defendant must agree to pay any judgment so rendered.

## ON MOTION FOR RELIEF

Plaintiffs in these consolidated products liability actions, all citizens and residents of the United Kingdom, allege injury, damages, and/or death resulting from the use of oral contraceptives. By order of February 19, 1980, this court dismissed the suits against defendant on the grounds of forum non conveniens, subject to the defendant's agreement to specified conditions. On March 18, 1980, plaintiffs pleaded a Rule 60(b) Motion for Relief.[1] This court subsequently vacated the dismissal pending determination of the motion.

After careful re-consideration and review of the pleadings, briefs, affidavits, and exhibits submitted to the court, and of the oral arguments heard on May 22, 1980, we remain convinced that this court is not the appropriate forum in which these cases should proceed. After much deliberation we again conclude that Pennsylvania is an inconvenient forum, based on an application of the principles and considerations of the leading forum non conveniens case of *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 67 S.Ct. 839, 91 L.Ed. 1055 (1947), and on an application of Pennsylvania choice of law rules as adopted in *Griffith v. United Air Lines, Inc.*, 416 Pa. 1, 203 A.2d 796 (1964). Accordingly, we shall deny plaintiffs' Motion for Relief, once again grant defendant's original Motion to Dismiss on grounds of forum non conveniens, and reinstate our previous order of dismissal, subject to the agreement of the defendant to the condi-

---

1. Rule 60(b)(6) of the Federal Rules of Civil Procedure provides:

 On motion and upon such terms as are just, the court may relieve a party or his legal repre-sentative from a final judgment, order, or proceeding for the following reasons: ... (6) any other reason justifying relief from the operation of the judgment.

tions specified by us in that order and again in the order accompanying this opinion.[2]

Plaintiffs allege that the defendant marketed defective drugs that were unfit and unsafe for their intended use, and failed to adequately warn consumers of the risk associated with use of the drugs. Plaintiffs' contention is that any tort which may have been committed by defendant occurred in Pennsylvania. Plaintiffs complain of an alleged lack of adequate and reasonable warning in connection with the labelling and marketing of the drugs. Defendant contends that the actual marketing, distribution, manufacture, prescription and ingestion of the drugs, as well as the alleged resulting injuries, all took place in the United Kingdom. Plaintiffs argue that the fundamental labelling and marketing decisions regarding foreign sales of these oral contraceptives were made at defendant's headquarters in Pennsylvania. Both sides have submitted exhibits to bolster their respective contentions as to the actual location of the marketing decisions which form the core of the alleged tort.

The factors to be considered in determining a motion to dismiss on grounds of forum non conveniens are set forth in *Gulf Oil Corp. v. Gilbert, supra* :

Important considerations are the relative ease of access to sources of proof, availability of compulsory process for attendance of unwilling, and the cost of obtaining, willing witnesses; . . . and all other practical problems that make trial of a case easy, expeditious and inexpensive. There may also be questions as to the enforcibility of a judgment if one is obtained.

*Gulf Oil Corp. v. Gilbert*, 330 U.S. at 508, 67 S.Ct. at 843.

Furthermore,

[t]here is a local interest in having localized controversies decided at home. There is an appropriateness, too, in having the trial of a diversity case in a forum that is at home with the state law that must govern the case, rather than having a court in some other forum entangle problems in conflict of laws, and in law foreign to itself.

*Id.* at 508, 67 S.Ct. at 843.

In our earlier opinion, we concluded that the United Kingdom, not Pennsylvania, was the more convenient and appropriate forum for these cases. We felt that the question of the safety of drugs marketed in a foreign country was properly a local matter for determination by that country, here the United Kingdom, and not by the courts of the United States. We thought that while Pennsylvania had no interest in the regulation of the safety of drugs produced and distributed in a foreign country, the United Kingdom did have an interest in the control of drugs distributed and consumed in its own country. We determined that under Pennsylvania choice of law rules, the laws of the United Kingdom, not of Pennsylvania, would be applied, even if the case was heard in Pennsylvania.

A federal court sitting in a diversity case must apply the choice of laws of the forum state. *Klaxon Co. v. Stentor Electric Manufacturing Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). Pennslyvania has adopted the "most significant relationship" test for determining choice of law. *Griffith v. United Air Lines, Inc.*, 416 Pa. 1, 203 A.2d 796 (1964). This approach is flexible, and contemplates an analysis of the policies and interests underlying the particular issues before the court. The test gives the place having the most interest in the problem paramount control over the legal issues arising out of the particular factual context, thereby allowing for the application of the policy of the jurisdiction most intimately concerned with the outcome of the litigation.

We are still persuaded that Pennsylvania does not have a sufficiently significant interest in this matter and that the choice of law test dictates that the laws of the Unit-

**2.** The reasons for so conditioning our order of dismissal are set forth in our opinion of February 19, 1980.

ed Kingdom be applied here. This controversy is of a local nature of primary interest to the United Kingdom, not Pennsylvania. As we stated in our earlier opinion, the question of drug safety is properly the concern of the country of manufacture, prescription, distribution, sale, use and injury. Each country, in the course of determining for itself the proper degree of regulation of drugs and drug safety, must balance the drug's benefits with its risk of harm. Each country must, of necessity, consider the values of its people and society in setting its liability standards for due care and adequate warning. Such standards, especially in so potentially dangerous and highly regulated an area as drug safety, should be set by the government and courts of the country most familiar with the needs of the people most affected by the particular safety standards established, namely, those who will actually use the drugs and who thus need the protection of government regulation and standards of safety.

Practical considerations also dictate that these cases be heard in the United Kingdom. Plaintiffs argue that the alleged tort occurred in Pennsylvania, so that documents and witnesses necessary as evidence in these cases will be more accessible to the parties and the court if the matter is heard in this forum. However, one issue raised by defendant is whether a tort was ever committed in Pennsylvania. Evidence relevant to this issue, relating to the marketing decisions made in connection with distribution of these drugs, is to be found in both Pennsylvania and the United Kingdom.

Moreover, even if some marketing decisions were indeed made in Pennsylvania, evidence as to their nature and effect constitutes but a part of the total case which plaintiffs must present to the trier of fact in order to sustain their burden of proof. There can be no finding of liability without a showing of injury. Whether or not tortious decisions were made or controlled by defendant in Pennsylvania, all manufacture, marketing, prescription, sale and ingestion of the drugs occurred in the United Kingdom, as did, most importantly, the resulting injuries and deaths. Thus, even if all evidence relevant to the issue of nature and situs of the alleged tort is to be found in Pennsylvania, all other necessary evidence as to the elements required to establish liability will be found in the United Kingdom.

Since the documents and witnesses which comprise the evidence which must be presented by the plaintiffs to establish their claims, and by the defendant to refute such claims, are to be found in both Pennsylvania and the United Kingdom, the *Gulf Oil* factors of ease of access to sources of proof and easy, expeditious, and inexpensive trial, coupled with considerations of fundamental fairness and responsible judicial administration, compel us to dismiss these cases on grounds of forum non conveniens.

Our conclusion is supported by what we perceive to be the relative ease of transporting evidence and witnesses from Pennsylvania to the United Kingdom compared with transporting all of the plaintiffs, evidence and witnesses from the United Kingdom to Pennsylvania, and by our conclusion as to the local nature of this controversy and the greater interest of the United Kingdom, compared to Pennsylvania, in having this matter resolved by British courts.

An analogous situation was presented to the court in *Henry v. Richardson-Merrell, Inc.*, 508 F.2d 28 (3rd Cir. 1975), a products liability case involving the drug Thalidomide. The court, in dismissing the action as time barred, applied the applicable statute of limitations of the foreign jurisdiction (Quebec, Canada) in which the drug was marketed, prescribed and consumed and in which the injury occurred. The limitation period of the foreign state was held applicable by the court because the forum in which the action was brought, New Jersey, was deemed to have no interest in having its own law applied. Furthermore, the court determined that Quebec's interest in the case was overwhelming, and that it was Quebec which had chief concern with the plaintiffs. *Id.* at 38. The court noted that much of the alleged tortious conduct of the

defendants, including the marketing and sale of the drug, misrepresentations made to secure Canadian approval of the drug, and any violation of the Canadian drug regulation statute, occurred in Canada. Moreover, the court quite correctly concluded that there were other "more serious problems with contending that anything but Canadian law should apply to this case". *Id.* The court stated that "New Jersey would not presume to tell a drug seller that its activity in Canada should be judged by the rules of New Jersey or for that matter by the United States Food and Drug Law". *Id.* at 38–39 (footnote omitted). "Canada clearly had the paramount interest in determining what testing and supportive data it would require before approving drugs for sale in Canada to Canadian citizens. Sound principles of comity direct that any misrepresentation to the Canadian drug authorities, *or any inadequacy of labels be judged by that nation's laws.*" *Id.* at 39 (emphasis added).

Finally, we note that on May 27, 1980, Judge Arthur A. Sullivan of the Circuit Court of Cook County, Illinois, County Department, Law Division, dismissed, on the basis of forum non conveniens, a similar action brought by residents of the United Kingdom against Searle Laboratories alleging injuries resulting from use of oral contraceptives. As with the cases before this court, the manufacture, marketing, distribution, sale and use of the drugs, as well as the alleged resulting injuries, all occurred in the United Kingdom. *Jones v. Searle Laboratories*, No. 79–L–13155.

ORDER

The plaintiffs' Motion for Relief is DENIED.

The defendant's Motion to Dismiss is GRANTED, conditioned upon the following:

1. That defendant consents to suit and acceptance of process in the United Kingdom in any civil actions timely filed by plaintiffs on their claims.

2. That defendant agrees to make available, at its own expense, any documents or witnesses within its control that are needed for fair adjudication of any action brought in the United Kingdom by the plaintiffs on their claims.

3. That defendant consents to pay any judgment or judgments, if any, which may be rendered against it in the United Kingdom in any civil action brought by plaintiffs on their claims.

4. The defendant to advise the Court of its consent to these conditions within ten days of this Order.

IT IS SO ORDERED.