**In re RICHARDSON–MERRELL, INC. Bendectin Products Liability Litigation.**

**MDL No. 486.***

United States District Court, S. D. Ohio, W. D.

Aug. 24, 1982.

Ronald D. Anton, Niagara Falls, N. Y., Robert T. Cunningham, Jr., Mobile, Ala., Richard J. Seidel, Pittsburgh, Pa., David J. Zola, Encino, Cal., James H. Ranum, Minneapolis, Minn., Raymond A. Fleck, Jr., Richard A. Aliano, Garden City, N. Y., Stanley J. Bell, San Francisco, Cal., John W. Gyorkos, Huntington Beach, Cal., Geoffrey E. Albrecht, Columbus, Ohio, John J. Carlino, New York City, James H. Wolfe, III, Newark, N. J., Sebastian Randazzo, Great Neck, N. Y., Barham Bratton, Austin, Tex., Morton Miller, New York City, Andrew J. Rocker, Jr., Cambridge, Ohio, Darrell M. Amlin, Detroit, Mich., Frederick J. Boncher, Grand Rapids, Mich., Kirk Portmann, Seattle, Wash., Rosemary Azar, Houma, La., Joseph

---

* This document relates to: C–1–82–285, C–1–82–286, C–1–82–287, C–1–82–288, C–1–82–289, C–1–82–290, C–1–82–291, C–1–82–292, C–1–82–293, C–1–82–294, C–1–82–295 and C–1–82–310.

A. Bukaty, Kansas City, Kan., Stanley M. Chesley, Cincinnati, Ohio, J. R. Crockett, Jr., Las Vegas, Nev., R. Jay Engel, San Francisco, Cal., Habush, Habush & Davis, S. C., Milwaukee, Wis., Thomas H. Bleakley, Thomas H. Bleakley, P. C., Detroit, Mich., Douglas Burns, Gadsden, Ala., Andrew J. Conner, Erie, Pa., Janine S. Dingleman, New Orleans, La., Lee S. Goldsmith, New York City, Larry Hayes, Dallas, Tex., Melvin Block, Brooklyn, N. Y., Anthony J. Caputo, P. C., White Plains, N. Y., W. W. Conwell, Birmingham, Ala., Allen T. Eaton, Washington, D. C., Romualdo Gonzalez, New Orleans, La., R. Ben Hogan, Birmingham, Ala., Gregory T. Hughes, Covington, Ky., John R. Martzell, New Orleans, La., Larry R. Monrad, Oklahoma City, Okl., Jeffrey A. Rich, Columbus, Ohio, Joseph D. Jamail, Houston, Tex., George A. Kokus, Miami, Fla., R. Gordon Pate, Birmingham, Ala., John F. Romano, West Palm Beach, Fla., Richard L. Josephson, Houston, Tex., Dale P. Martin, Morgan City, La., Richard Mithoff, Houston, Tex., Patrick J. Reardon, Leavenworth, Kan., Mary Ann Scheuhing, Philadelphia, Pa., Stanley S. Schwartz, Southfield, Mich., Toberoff & Broome, New York City, Windle Turley, Dallas, Tex., Earl Terman, Scottsdale, Ariz., Edwin H. Beachler, Pittsburgh, Pa., Edwin D. Smith, Topeka, Kan., James J. Thornton, Jr., Shreveport, La., George White, Godsden, Ala., Thomas C. DeLorenzo, Philadelphia, Pa., Richard L. Swick, Washington, D. C., Russell T. Tritico, Lake Charles, La., Henry E. Wise, Dallas, Tex., Melvin M. Belli, San Francisco, Cal., Carlos E. Heaps, Birmingham, Ala., James G. Butler, Los Angeles, Cal., Frank McClellan, Philadelphia, Pa., Louis M. Tarasi, Jr., Pittsburgh, Pa., F. Ronald Fraley, Tampa, Fla., Monty L. Preiser, Charleston, W. Va., Charles E. Joiner, West Monroe, La., William S. Vincent, Jr., Patricia R. Vincent, New Orleans, La., Robert C. Daniels, Philadelphia, Pa., John Getgey, Cincinnati, Ohio, Hubert L. Stone, Jr., Corpus Christi, Tex., William T. Jorden, Meadville, Pa., Stephen B. Murray, New Orleans, La., Craig McIntosh, San Francisco, Cal., Michael R. Treanor, New York City, for plaintiffs.

Henry B. Alsobrook, Jr., New Orleans, La., Naomi C. Dallob, Cincinnati, Ohio, Jena M. Farquharson, New Orleans, La., Nina M. Gussack, Philadelphia, Pa., Sidney G. Leech, Baltimore, Md., Edward W. Maderia, Jr., Philadelphia, Pa., Edward M. Boyle, Payne & Jones, Olathe, Kan., R. L. Davis, Jr., Monroe, La., John P. Gartland, Columbus, Ohio, Leon H. Handley, Orlando, Fla., Allan Fudim, Lester, Schwab, Katz & Dwyer, New York City, Frank W. Middleton, Baton Rouge, La., Jeffrey J. Carlson, Santa Monica, Cal., Drake DeLanoy, Las Vegas, Nev., Louis E. Gerber, Columbus, Ohio, Lawrence A. Hurlburt, Saginaw, Mich., Ogden N. Lewis, New York City, Albert A. Miller, Detroit, Mich., John H. Mudd, Baltimore, Md., D. Gary Reed, Cincinnati, Ohio, John B. Tally, Jr., Birmingham, Ala., D. Scott Wide, New York City, Raymond Hasley, Pittsburgh, Pa., William G. Paul, Patrick M. Ryan, Lawrence E. Walsh, Oklahoma City, Okl., James A. Williams, Dallas, Tex., David Richman, Philadelphia, Pa., Patrick W. Schmidt, Milwaukee, Wis., Will J. Schaaf, Erie, Pa., O. J. Weber, Jr., Beaumont, Tex., Frank C. Woodside, III, Cincinnati, Ohio, H. T. Hermansen, Jr., Corpus Christi, Tex., John H. Westover, Phoenix, Ariz., G. Alan Cunningham, Minneapolis, Minn., Dennis M. Rothman, New York City, Joseph R. Zamora, Santa Monica, Cal., Donald F Pierce, W. Alexander Moseley, Mobile, Ala., Riker, Danzig, Scherer & Hyland, Morristown, N. J., Louis D Peterson, Seattle, Wash., Frank G. Godson, Buffalo, N. Y., George A. Kokus, Miami, Fla., Dughi & Hewit, Westfield, N. J., for defendants.

## ORDER GRANTING DEFENDANT'S MOTIONS TO DISMISS

CARL B. RUBIN, Chief Judge.

This matter is before the Court on defendant Merrell-Dow Pharmaceuticals, Inc's., (hereinafter Merrell-Dow) renewed Motions to Dismiss the above-captioned complaints based on the doctrine of *forum non conveniens.* Plaintiffs filed a memorandum contra the original Motions.

## I. Introduction

Plaintiffs in the cases addressed herein are all residents of the United Kingdom. These suits were originally filed in the Southern District of New York against Richardson-Merrell, Inc., the predecessor of defendant Merrell-Dow, based on diversity of citizenship. In their complaints, plaintiffs alleged that they were injured as a result of their mothers' ingestion of the drug Debendox during pregnancy, and that defendant is liable to them based on its conduct in the development, marketing, testing, and promotion of Debendox as well as the related drug Bendectin.[1] Debendox is manufactured and distributed in the United Kingdom by Richardson-Merrell Ltd., a wholly-owned British subsidiary of the defendant. Richardson-Merrell Ltd. was not named as a defendant in these actions.

The motions at issue herein were originally filed in the Southern District of New York. After oral argument on the motion, but prior to the Court's ruling, plaintiffs moved to voluntarily dismiss these actions pursuant to Rule 41(a)(2), or, in the alternative, to transfer these actions to the Southern District of Ohio. In his Memorandum and Order of February 1, 1982, as modified by a subsequent Memorandum and Order of February 25, 1982, Judge Brieant ordered that these cases be transferred to this Court pursuant to 28 U.S.C. § 1404(a). Defendant has since renewed its pending motion to dismiss these cases based on the doctrine of *forum non conveniens.*

An initial question raised by defendant's motion is whether federal or state law controls the application of the doctrine of *forum non conveniens* in these cases. This issue once again eludes decision, however, because New York courts appear to follow the same standards set forth in the federal cases.[2] *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 509, 67 S.Ct. 839, 843, 91 L.Ed. 1055 (1947); *Fosen v. United Technologies Corp.,* 484 F.Supp. 490, 503 n.8 (S.D.N.Y.1980), aff'd 633 F.2d 203 (2d Cir. 1980). We note, however, that given the discretionary nature of the *forum non conveniens* inquiry and the factors established by the Supreme Court to guide such a determination, it would appear anomalous for the Court to apply anything but federal principles.[3] In any event, this Court will consider the defendant's Motions to Dismiss under the standards recently set forth in *Piper v. Reyno,* —— U.S. ——, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981), as well as prior federal cases.

## II. The Doctrine of Forum Non Conveniens

In *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 67 S.Ct. 839, 91 L.Ed. 1055 (1947), the Supreme Court of the United States held that a district court has the inherent power to dismiss an action on the basis of *forum non conveniens,* despite the existence of jurisdiction and proper venue. Application of the doctrine necessarily presumes the availability of an alternative forum. *Id.* at 507, 67 S.Ct. at 842. The Supreme Court listed specific "private interest" and "public interest" factors which the trial court should consider in exercising its discretion. The private interest factors to be considered are: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process for the attendance of unwilling witnesses; (3) the costs of obtaining attendance of willing witnesses; (4) the possibility of view of premises, if a view is appropriate to the action; (5) the enforceability of a judgment if one is obtained; and

---

1. Bendectin is a prescription drug which defendant manufactures in the United States. Debendox is a similar, if not identical, drug which is manufactured and sold in the United Kingdom.

2. The Supreme Court continues to reserve this question. *Piper Aircraft Co. v. Reyno,* —— U.S. ——, —— n.13, 102 S.Ct. 252, 262 n.13, 70 L.Ed.2d 419 (1981).

3. As Judge Brieant noted in his Memorandum and Order of February 25, 1982:

   "Most of the 'public interest factors' affecting the convenience of the forum relate peculiarly to the *court* in which the case is pending, rather than to the state in which the federal court is located." (emphasis in original).

(6) "all other practical problems that make trial of a case easy, expeditious, and inexpensive." *Id.* at 508, 67 S.Ct. at 843. The Court also listed the following public interest factors: (1) the administrative difficulty flowing from court congestion; (2) the "local interest in having localized controversies decided at home;" (3) the interest in having a diversity case tried in a forum which is familiar with the law which will govern the action; (4) the avoidance of unnecessary problems in conflicts of law or the application of foreign law; and (5) the unfairness of burdening citizens in an unrelated forum with jury duty. *Id.* at 509, 67 S.Ct. at 843. The Court in *Gilbert* cautioned, however, that a plaintiff's choice of forum is entitled to great deference and should only be rejected if the above factors weigh heavily in favor of the defendant.

In *Piper Aircraft Co. v. Reyno,* — U.S. ——, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981), the Supreme Court reaffirmed the standards set forth in *Gilbert,* and added certain qualifications of particular relevance to this case. *Reyno* involved an action arising out of an air crash in Scotland. Plaintiff, a representative of the estates of several Scottish citizens who were killed in the accident, brought suit against Piper Aircraft Co., the American manufacturer of the airplane. Defendant removed the case from the California state courts to the United States District Court for the Central District of California which then transferred it to the United States District Court for the Middle District of Pennsylvania. The defendant then moved to dismiss the case based on the doctrine of *forum non conveniens.* The district court granted the Motion to Dismiss conditioned upon defendant's agreement to be sued in Scotland. The Third Circuit reversed, *Reyno v. Piper Aircraft Co.,* 630 F.2d 149 (3rd Cir. 1980), and on appeal, the Supreme Court reversed ·the appeals court and upheld the district court's dismissal. *Piper Aircraft Co. v. Reyno,* — U.S. ——, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981).

The Supreme Court in *Reyno* first held that the fact that Scottish law was less favorable to plaintiffs did not render a dis-missal based on *forum non conveniens* inappropriate, and that "[t]he possibility of a change in substantive law should ordinarily not be given conclusive or even substantial weight in the *forum non conveniens* inquiry." *Id.* at ——, 102 S.Ct. at 261. The Court, however, did recognize that if the remedy provided by the alternative forum is so clearly inadequate or unsatisfactory that it is no remedy at all, the unfavorable change in law may be given substantial weight and the Court may conclude that dismissal is not in the interest of justice. *Id.* at ——, 102 S.Ct. at 265.

The Supreme Court also held that the presumption in favor of a plaintiff's choice of forum is of less force when the plaintiff is foreign because the underlying assumption that such choice is one of convenience is absent. *Id.* at ——, 102 S.Ct. at 266. Finally, the Supreme Court approved the district court's application of the private and public factors set forth in *Gilbert* and the balance that court ultimately reached in favor of the Scottish forum. Specifically the court cited the location of relevant evidence in Great Britain, the defendant's inability to implead potential third party defendants in the United States, Scotland's strong interest in the litigation, and finally, the lack of American interest sufficient to justify the expenditure of judicial time and resources which trial in this country would entail. *Id.* at —— – ——, 102 S.Ct. at 267–68.

*Application of the Doctrine of Forum Non Conveniens to These Cases*

■ A prerequisite to dismissal of a case on the grounds of *forum non conveniens,* is the availability of an alternative forum. *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 506–07, 67 S.Ct. 839, 842, 91 L.Ed. 1055 (1947). Defendant contends that the courts of the United Kingdom provide such a forum, and in this regard submitted the affidavit John Richard Parker, a British solicitor. (Ex. 4, Appendix to Defendant's Motions to Dismiss). Mr. Parker attests that the Complaints in these cases state a cause of action under British law based on various

potential theories of liability, and that such claims would not be barred by the applicable statute of limitations. (Ex. 4 at pps. 3–6). Plaintiffs in their memorandum contra and accompanying affidavit of attorney Lawrence Tabak, contend that the United Kingdom is not an available forum because the defendant is not subject to its jurisdiction. Plaintiffs apparently do not contest the existence of a cause of action against the defendant, at least in theory, under the laws of the United Kingdom.

In response to plaintiffs' concerns, we note that courts have frequently conditioned a dismissal on the grounds of *forum non conveniens* upon defendant's consent to jurisdiction in the alternative forum. *Reyno v. Piper Aircraft Co.*, 479 F.Supp. 727, 738 (M.D.Pa.) *rev'd.* 630 F.2d 149 (3rd Cir.) *rev'd.* —— U.S. ——, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981); *Harrison v. Wyeth Laboratories*, 510 F.Supp. 1, 9 (E.D.Pa.1980); *Purser v. American Home Products Corp.*, 80 Civ. 710 (S.D.N.Y. 1/30/81). In a letter addressed to Judge Brieant, defendant indicated its willingness to accept similar conditions of dismissal in these cases, should its Motions be granted. (Ex. 10, Appendix to Defendant's Renewed Motion to Dismiss). Based on the essentially uncontroverted affidavit of Mr. Parker and the Court's ability to impose conditions upon a dismissal, we conclude that the United Kingdom provides an alternative forum for these actions.

In its Motion to Dismiss, defendant argues that the following "private interest" factors favor trial of these actions in the United Kingdom. First, defendant contends that the availability of witnesses and sources of proof render the United Kingdom a more convenient forum. Specifically, defendant cites the testimony and records of plaintiffs' treating physicians, the testimony and records of employees of both Richardson-Merrell Ltd., and Boots Pure Drug Co., Ltd., the manufacturer of Debendox, the location of records of British regulatory authorities and witnesses related thereto, the location of records revealing plaintiffs' and their parents' genetic and health histories, and finally, the fact that potential witnesses in the United Kingdom who are not parties to this action would not be subject to compulsory process. The defendant also contends that there is a risk that a judgment in defendant's favor in this Court would not be afforded comity in the United Kingdom.

Although plaintiffs have not responded in this Court to defendant's renewal of its Motions to Dismiss, we anticipate the following "private interest factors" in favor of trial in this district.[4] Many, if not all of defendant's employees and records are now present in this district.[5] Defendant has also been sued by numerous plaintiffs who are residents of this country based on its sales of the related drug Bendectin. A total of 118 of these cases are now consolidated before this Court for pretrial purposes pursuant to an Order of the Multi-District Litigation Panel.

The Court notes the somewhat anomalous positions from which the parties argue convenience. Although parties customarily urge an alternative forum based on their own convenience, defendant Merrell-Dow, whose corporate headquarters are located in Cincinnati, Ohio, nevertheless asserts that it is more convenient to try this case in Great Britain. Plaintiffs, on the other hand, despite their residence in the United Kingdom, would undoubtedly argue that Cincinnati is the more appropriate forum. As the Supreme Court conceded in *Reyno*, the private interest factors in these cases "point in both directions." —— U.S. at ——, 102 S.Ct. at 266. The Court finds that on balance, however, they favor a British forum.

While defendant's records and files are now located in Ohio, the location of this type of evidence does not bear heavily on the convenience of trial in a particular forum. Nor can plaintiffs assert that this Court is a preferred forum because Ameri-

---

4. Plaintiffs argued in their memorandum filed in the Southern District of New York that New York was a convenient forum for these cases.

5. Defendant's corporate headquarters were moved from Wilton, Connecticut to Cincinnati, Ohio on March 10, 1981.

can courts provide greater access to such sources of proof. The Supreme Court in *Reyno* specifically stated that in such cases "district courts might dismiss subject to the condition that defendant corporations agree to provide the records relevant to the plaintiff's claims." —— U.S. at ——, 102 S.Ct. at 267.

On the other hand, that evidence, including witnesses, which addresses the plaintiff's injuries and the specific manufacture and sale of the Debendox ingested by plaintiffs' mothers is all located in Great Britain. As Judge Weinman noted in the *Harrison* case, *supra* :

"Moreover, if some marketing decisions were indeed made in Pennsylvania, evidence as to their nature and effect constitutes but a part of the total case which plaintiffs must present to the trier of fact in order to sustain their burden of proof. There can be no finding of liability without a showing of injury. Whether or not tortious decisions were made or controlled by defendant in Pennsylvania, all manufacture, marketing, prescription, sale and ingestion of the drugs occurred in the United Kingdom, as did, most importantly, the resulting injuries and deaths. Thus, even if all evidence relevant to the issue of nature and situs of the alleged tort is to be found in Pennsylvania, all other necessary evidence as to the elements required to establish liability will be found in the United Kingdom."

The more impressive arguments in favor of dismissal of these cases address the "public interest" factors which are involved in the *forum non conveniens* inquiry. Defendant argues that to allow these foreign plaintiffs access to American courts on the bare nexus that a product was developed and tested in this country, when it was manufactured and sold abroad by a foreign corporation, would flood this country with cases in which its own interest is minimal

and the United Kingdom's great. We find this argument highly persuasive from both a practical and theoretical viewpoint.

One of the public interest factors which the Court may consider in a *forum non conveniens* inquiry is whether it will be necessary to apply foreign law. Because this case was transferred to this Court pursuant to 28 U.S.C. § 1404(a), we must apply the same substantive law and choice of law rules which would have governed the transferor court. *Van Dusen v. Barrack*, 376 U.S. 612, 84 S.Ct. 805, 11 L.Ed.2d 945 (1964); *Martin v. Stokes*, 623 F.2d 469, 473 (6th Cir. 1980). New York choice of law rules must therefore apply in these cases. Defendant contends that there is "no question" that New York courts would apply British law and plaintiffs have made no specific assertion to the contrary.

In *Babcock v. Johnson*, 12 N.Y.2d 473, 191 N.E.2d 279, 240 N.Y.S.2d 743 (1963), the New York Court of Appeals held that controlling effect should be given to "the law of the jurisdiction which, because of its relationship or contact with the occurrence or the parties, has the greatest concern with the specific issue raised in the litigation." *Id.* at 481, 191 N.E.2d at 283, 240 N.Y.S.2d at 749; *Loebig v. Larucci*, 572 F.2d 81, 84 (2d Cir. 1978), *Danser v. Firestone Tire and Rubber Co.*, 86 F.R.D. 120 (S.D.N.Y.1980). When the interests of New York and the United Kingdom in this litigation are compared, the United Kingdom has the unquestionably greater interest. This action involves the safety of drugs manufactured in the United Kingdom and sold to its citizens pursuant to licenses issued by that government. The interest of the United Kingdom is overwhelmingly apparent. New York, and Ohio for that matter, have a minimal interest in the safety of products which are manufactured, regulated and sold abroad by foreign entities, even though development or testing occurred in this country.[6]

6. In *Reyno*, which involved an American manufacturer, the Supreme Court noted:

"Respondent argues that American citizens have an interest in insuring that American manufacturers are deterred from producing defective products, and that additional deterrents might be obtained if Piper and Hartzell were tried in the United States where they could be sued on the basis of both negligence and strict liability. However, the incremen-

At this juncture, then, it appears virtually certain that the substantive tort law of the United Kingdom will govern these actions. This Court's unfamiliarity with the foreign law which will govern these actions supports dismissal on the basis of *forum non conveniens*. *Piper Aircraft Co. v. Reyno, supra* at ——, 102 S.Ct. at 268; *Calavo Growers of California v. Belguim*, 632 F.2d 963, 967 (2nd Cir. 1980), *cert. denied*, 449 U.S. 1084, 101 S.Ct. 871, 66 L.Ed.2d 809 (1981).

Consistent with the New York choice of law inquiry, we find that from a theoretical or policy perspective, the United Kingdom is the more appropriate forum for trial of the issues raised herein. As the Court in *Harrison* stated:

> "Questions as to the safety of drugs marketed in a foreign country are properly the concern of that country; the courts of the United States are ill-equipped to set a standard of product safety for drugs sold in other countries. The issues raised here concern the knowledge, if any, of an allegedly unreasonable risk, and the sufficiency of the warning of that risk to users of the product. Both the British and the American governments have established requirements as to the standards of safety for drugs and the adequacy of any warnings to be given in connection with its use. Each government must weigh the merits of permitting the drug's use and the necessity of requiring a warning. Each makes its own determination as to the standards of degree of safety and duty of care. This balancing of the overall benefits to be derived from a product's use with the risk of harm associated with that use is peculiarly suited to a forum of the country in which the product is to be used." 510 F.Supp. at 4.

The Court may also take into consideration its own administrative concerns, and the fairness of burdening a jury in this district with a trial in which this country's interest is less than compelling. Because of the pending multi-district litigation, it is true that cases would not have an adverse effect on the Court's docket insofar as pretrial discovery is concerned. Because they were transferred pursuant to 1404(a), however, trial to a jury of each of these actions in this district would be required. We also cannot ignore the likelihood that countless additional actions against the defendant by foreign plaintiffs will be filed in this district or transferred to it, absent the Court's dismissal of these actions. The minimal nexus this jurisdiction has with such cases simply does not justify the potential burden on this Court and the citizens of this district.

■ This Court is aware that Judge Battisti of the Northern District of Ohio has recently denied a Motion to Dismiss based on similar grounds in five Bendectin cases pending before that Court. *Lake v. Richardson-Merrell, Inc.*, 538 F.Supp. 262 (1982). We note, however, some distinguishing aspects of that decision. In two of the cases considered by Judge Battisti, the Canadian plaintiff had the equivalent of no remedy at all under the law of Quebec because its rules of prescription had extinguished their right of action. The Court, relying on *Piper*, therefore found that dismissal based on *forum non conveniens* was totally inappropriate in those cases. Judge Battisti also found that under Ohio choice of law rules, the substantive tort law of Ohio would govern the actions considered therein. Finally, we note that the determination to dismiss on the basis of *forum non conveniens* is fundamentally a matter of the trial court's discretion. *Paper Operations Consultants Intern., Ltd. v. S.S. Hong Kong Amber*, 513 F.2d 667 (9th Cir. 1975).

When the public interest factors identified above are considered with the private interest factors, the scale tips heavily towards dismissal of these actions. The fact that the multi-district litigation involving Bendectin is now before this Court is not of sufficient weight to affect that assessment. Accordingly, for the reasons stated herein, the Court finds that these actions should be

tal deterrents that would be gained if this trial were held in an American court is likely to be insignificant." —— U.S. at ——, 102 S.Ct. at 268.

dismissed. Such dismissal is conditioned upon the following:

(1) defendant's consent to suit and acceptance of process in the United Kingdom in any civil actions filed by plaintiffs on their claims;

(2) defendant's agreement to make available any documents or witnesses within its control that are necessary for fair adjudication of any action brought in the United Kingdom by the plaintiffs on their claims;

(3) defendant's consent to pay any judgment or judgments which may be rendered against it in the United Kingdom in any civil action brought by plaintiffs on their claims; and

(4) defendant's agreement to waive any statute of limitations defense that did not exist prior to the institution of any of these actions.

IT IS SO ORDERED.