Thomas McCRACKEN, Administrator of the Estate of Annie McCracken, Deceased, et al., Appellant, Plaintiff Below,

v.

ELI LILLY & COMPANY, An Indiana Corporation, et al., Appellee, Defendants Below,

And Other Consolidated Cases.

No. 1–1184A272.

Court of Appeals of Indiana, First District.

July 8, 1986.

James E. Rocap, Jr., Thomas P. Ledgerwood, Rocap, Reese, Dowling & Heath, Indianapolis, Robert M. Gholston, Franklin, for appellant, plaintiff below.

Stephen W. Terry, Jr., Thomas G. Stayton, George M. Plews, Baker & Daniels, Indianapolis, Stephen L. Huddleston, Huddleston & Combs, Franklin, for appellee, defendants below.

ROBERTSON, Presiding Judge.

This appeal arises from a trial court ruling which, in substance, held that the cases of the plaintiff-appellants should be dismissed pursuant to the Indiana Rules of Trial Procedure 4.4(C) in that the United Kingdom is the more convenient forum. Nine cases are consolidated here and the 205 plaintiffs claim damages from personal injuries resulting from the ingestion of a drug known as Opren. Thirteen other plaintiffs are administrators, representing decedents who have wrongful death claims. In each instance, the plaintiffs and the decedents are subjects and residents of the United Kingdom. The defendants are Eli Lilly & Company, an Indiana Corporation; Harvey Barnett, a Hamilton County, Indiana, resident and United States citizen; and W. Ian H. Shedden, a subject and resident of the United Kingdom. Three other corporate defendants are shown to be United Kingdom corporations: Lilly Industries Limited, Lilly Research Centre Limited, and Dista Products Limited.

We affirm.

In ruling on the motion to dismiss, the trial court entered its opinion and order. Among other things, the trial court found that the Johnson Circuit Court was a *forum non conveniens* for the reasons that it was inconvenient; that the trial court would be required to apply the law of the United Kingdom; and that the plaintiffs have an adequate and proper remedy in the United Kingdom. Additionally, the trial court imposed the following conditions upon the defendant-appellees:

(a) to consent to suit in any action timely filed by the United Kingdom claimants in the United Kingdom;

(b) to waive any statute of limitations defense against the present Plaintiffs under United Kingdom law that may have arisen after these claims were filed in Indiana; and,
    [sic]
(3) to comply in the United Kingdom at their own expense, with all discovery obligations in any actions instituted against them in the United Kingdom.

The issues are stated thus:

1. Whether the Court erred and abused its discretion in holding that the initiating Forum is so inconvenient to the Parties and Witnesses that under the Doctrine of Forum Non Conveniens the cause should be dismissed?

2. Whether the court erred and abused its discretion by holding that the Court would be required to apply the law of the United Kingdom at the trial and the more convenient forum would be the United Kingdom?

3. Whether the Court erred and abused its discretion in holding that the Courts of the United Kingdom provide an adequate and proper remedy in this cause of action?

4. Whether the conditions imposed upon the Defendants at the time the Court granted the Dismissal would be sufficient to permit the Plaintiffs substantial justice?

The trial court's ruling was based upon Indiana Rules of Trial Procedure, T.R. 4.4(C) which reads:

(C) More Convenient Forum. Jurisdiction under this rule is subject to the

power of the court to order the litigation to be held elsewhere under such reasonable conditions as the court in its discretion may determine to be just

In the exercise of that discretion the court may appropriately consider such factors as:

(1) Amenability to personal jurisdiction in this state and in any alternative forum of the parties to the action;

(2) Convenience to the parties and witnesses of the trial in this state in any alternative forum;

(3) Differences in conflict of law rules applicable in this state and in the alternative forum; or

(4) Any other factors having substantial bearing upon the selection of a convenient, reasonable and fair place of trial.

A review of the facts before the trial court which militate in favor of the ruling show that Opren (chemically known as Benoxoprofen) is a prescription medication used in the United Kingdom to reduce inflammation in arthritis and similar diseases. Benoxoprofen was discovered and synthesized by Lilly Industries Limited (LIL) at facilities operated by Lilly Research Centre Limited (LRCL). LRCL is a wholly-owned subsidiary of LIL Dista Products Limited (Dista), another wholly-owned subsidiary of LIL, which marketed and sold all of the Opren consumed by the claimants. LIL funded and directed all of the basic research and holds the United Kingdom patents on Opren. All animal and human testing of Opren was done by LRCL in the United Kingdom.

Under the United Kingdom's New Medicines Act of 1968, a scheme requires a product license prior to marketing new drugs from a government agency named the Department of Health and Social Security (DHSS). In applying for a DHSS product license, information including proposed uses, dosages, clinical trial data, and side effects must be documented and submitted. A DHSS advisory committee of physicians, the Committee on Safety of Medicines (CSM), recommends a product license if the drug is found to be safe and effective. In March 1980, the DHSS issued a product license to LIL, and the manufacture of Opren commenced with about 192 million tablets eventually produced. As previously mentioned, all marketing and distribution of Opren in the United Kingdom was done by Dista.

The DHSS regulates the contents of the prescribing information sheet (data sheet) given to physicians in the United Kingdom. Information about the drug including proper dosages, contraindications, warnings and possible side effects is contained on the data sheet. Data sheets may not be changed without the permission of DHSS and providing information about a drug which is not in strict accordance with the data sheet is unlawful. The Adverse Reactions Subcommittee of the CSM monitors suspected adverse reactions to drugs. Most adverse reaction reporting is done by physicians who send "yellow cards" directly to the CSM with a description of the adverse reaction. CSM tabulates these cards and makes recommendations to the DHSS who, in turn, changes, when warranted, the data sheet or the product license. The original Opren data sheet, sent to all general practice physicians and rheumatic disease specialists in the United Kingdom, contained warnings about a number of possible side effects. LIL remained in touch with CSM about suspected adverse reactions with LIL, in October, 1981, seeking permission with DHSS to change the Opren data sheet to increase cautions and change dosages to elderly patients. Those changes were made in May, 1982, with the revised data sheet distributed as previously set forth. In August, 1982, the Opren product license was suspended by DHSS.

The relationship between Eli Lilly & Company, (Lilly) an Indiana corporation, and LIL is that LIL is related by a chain of ownership to Lilly. LIL has substantially different management from Lilly and functions independently without day-to-day direction, from Lilly.

ISSUE I

■ Our review of the trial court decision is limited to the question of whether

the trial court abused its discretion. *Drexel Burnhan Lambert v. Merchants Inv. Coun.*, (1983) Ind.App., 451 N.E.2d 346; *Duncan v. Rogers*, (1983) Ind.App., 444 N.E.2d 1255.

An abuse of discretion occurs only when the trial court reaches a conclusion against logic and the natural inferences to be drawn therefrom. *Killearn Properties, Inc. v. Lambright*, (1978) 176 Ind. App. 684, 377 N.E.2d 417. In reviewing discretionary motions, *we shall affirm if there is any rational basis for the trial court's action.*

*Drexel, supra*, 451 N.E.2d at 349.

Initially we note that we place reliance upon the holdings in four federal cases which bear a factual similarity to the case on appeal. Those cases are: *In re Richardson-Merrell, Inc.* (S.D.Ohio 1982), 545 F.Supp. 1130, aff'd. sub. nom. *Dowling v. Richardson-Merrill, Inc.* (6th Cir.1984) 727 F.2d 608; *Harrison v. Wyeth Laboratories* (E.D.Pa.1980) 510 F.Supp. 1, aff'd (3rd Cir. 1982), 676 F.2d 685; and, *Ledingham v. Parke-Davis Div. of Warner-Lambert Co.* (E.D.N.Y.1986) 628 F.Supp. 1447. The language used in the federal cases displays a semantic difference in some degree from the language contained in T.R. 4.4.(C); however, there is a sufficient similarity in the spirit of the state and federal rules as they relate to the doctrine of *forum non conveniens* in the context of international litigation that we deem them to be appropriate authority in deciding this appeal.

*Dowling, supra*, citing *Gulf Oil Co. v. Gilbert*, 330 U.S. 501, 67 S.Ct. 839, 91 L.Ed. 1055 (1947); *Koster v. Lumbermans Mutual Casualty* 330 U.S. 518, 67 S.Ct. 828, 91 L.Ed 1067 (1947) and *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981) contains a summary of a series of private and public interests to be considered by the trial court in ruling on a motion to dismiss based upon the grounds of *forum non conveniens.* Among the private interests to be considered, as applicable to this case, are the relative ease of access to sources of proof, the availability of compulsory process for attendance of unwilling witnesses, the cost of obtaining attendance of willing witnesses, and, the other practical problems that make a trial of the case easy, expeditious, and inexpensive. *Dowling, supra*, 727 F.2d at 612.

Under the previously recited facts, it is obvious that the majority of evidence relating to causation and damages are located in the United Kingdom. The more than 200 plaintiffs, their doctors, and family members, all of whom are highly potential witnesses as to suffering, debilitation and related evidence, are all located in the United Kingdom. Additionally, the records, exhibits and personnel pertaining to the several governmental agencies and the evidence of manufacturing and distribution by all of the corporate defendants, except Lilly, are in the United Kingdom. *See Ledingham*, 628 F.Supp. beginning at 1450. It would further appear from the record that there is no hinderance in obtaining the attendance at trial of willing witnesses in the United Kingdom. The plaintiffs do point out that one witness, Barnett, an Indiana resident and former Lilly employee, might not be compelled to testify under the several applicable rules of courts in the United Kingdom. If this be the fact, we are of the opinion that it is not of sufficient weight to offset the other factors favoring trials in the United Kingdom.

■ Also, a substantial part of the plaintiffs' argument on the first issue centers on the fact that under the law in the United Kingdom, there is no opportunity to utilize discovery depositions. To some extent the evidence conflicts as to the location and availability of records which tend to prove alteration and/or falsification of certain documents on the part of Lilly and LIL. It may be that this evidence is duplicated in both jurisdictions. However, difficulties, if any, posed by the lack of plaintiffs' discovery depositions are a part of the balancing of the public and private interests necessary in determining an appropriate forum. See *Ledingham, supra*, and *Dowling, supra.* The discovery process is only a portion of the overall litigation, and whatever convenience, if any, is offered by the

use of discovery depositions is more than offset by other factors. Additionally, it appears that live testimony is preferred over depositions. *Gulf Oil, supra,* 330 U.S. at 511, 67 S.Ct. at 844.

Among applicable public interests to be considered by the trial court are the administrative difficulties of courts with congested dockets, the burden of jury duty on people of a community having no connection with the litigation, the desirability of holding a trial near those most affected (local interest in deciding local controversies at home), and the appropriateness of holding a trial in a diversity case in a court which is familiar with governing law. *Dowling,* 727 F.2d at 612. We feel it fair to note that this litigation, should it be tried to the fullest extent with the imposition of jury duty in the Johnson Circuit Court in Johnson County, Indiana, could be of catastrophic impact to the court and citizens of that county, solely from the magnitude and complexity of the litigation. We also observe that Johnson County's connection to the litigation is negligible.

Also of significant import to this case is the interest of the United Kingdom in deciding the issue of negligence. The following language from *Harrison, supra* is most appropriate:

> Questions as to the safety of drugs marketed in a foreign country are properly the concern of that country; the courts of the United States are ill-equipped to set a standard of products safety for drugs sold in other countries. The issues raised here concern the knowledge, if any, of an allegedly unreasonable risk, and the sufficiency of the warning of that risk to users of the product. Both the British and the American governments have established requirements as to the standards of safety for drugs and the adequacy of any warnings to be given in connection with its use. Each government must weigh the merits of permitting the drug's use and the necessity of requiring a warning .... The United States should not impose its own view of the safety, warning, and duty of care required of drugs sold in the United States upon a foreign country when those same drugs are sold in that country.

510 F.Supp. at 4.

See also: *In re Union Carbide Corporation Gas Plant Disaster at Bhopal, India in December, 1984.* (S.D.N.Y.1986) 634 F.Supp. 842, 54 U.S.L.W. 2586 for similar reasoning and result.

As another aspect of this issue, the plaintiffs, citing *Gulf Oil, supra,* and *Pain v. United Technologies,* (D.C.Cir.1980) 637 F.2d 775, argue that the plaintiffs' choice of the forum should be given great weight and should rarely be disturbed. However, it appears that when a foreign citizen chooses a forum other than his own nation, a substantially diminished presumption of convenience is present. See: *Piper, supra,* and *Dowling, supra.*

■ Also inherent in ruling on this issue, as well as the question posed in the third issue, is the clear fact that the plaintiffs have an adequate alternative forum for their litigation in the United Kingdom. Paraphrasing from *Ledingham, supra,* it can be said that although a potential products liability award to a plaintiff might be smaller in the United Kingdom and even though litigation there might be more expensive and more difficult, there appears no danger that the plaintiffs would be treated unfairly or be deprived of their remedy. Conversely stated, the present plaintiffs would have to demonstrate that the alternative forum is so inadequate or unsatisfactory that there is no remedy at all. *Ledingham, supra,* 628 F.Supp. at 1450.

■ In summarization, when applying the appropriate abuse of discretion standard of review to the foregoing considerations, we are of the opinion that the trial court did not err in ruling as it did on the first issue. Concomitantly, we are of the further opinion that in correctly ruling on the first issue, discussion and decision of the second and third issues would not be material to this opinion.

As to the fourth issue, the conditions of dismissal, we find that the errors argued by the plaintiffs are speculative. It would appear from previously cited authorities, that the conditions imposed are fairly standard. See: *Harrison, supra.* In any event and to the best of our knowledge, the conditions have not, as yet, posed a problem, and any error assigned in this regard is premature.

Judgment affirmed.

RATLIFF and NEAL, JJ., concur.