Stephanie **LEDINGHAM**, as mother and natural guardian of Philip David Ledingham, an infant, Plaintiff,

v.

**PARKE–DAVIS DIVISION OF WARNER–LAMBERT COMPANY, Parke, Davis & Company, Warner-Lambert Company, Defendants.**

**No. 84 CV 2821.**

United States District Court, E.D. New York.

Feb. 20, 1986.

Julien & Schlesinger, P.C., New York City (Alfred S. Julian, Edward J. Sanocki, Jr., William D. Fireman, of counsel), for plaintiff.

Heidell, Pittoni & Moran, P.C., New York City (Walter R. Marklein, of counsel), for defendants.

## MEMORANDUM AND ORDER

McLAUGHLIN, District Judge.

The infant plaintiff is alleged to have suffered serious birth defects as the result of his mother's ingestion of the drug DILANTIN during pregnancy. Defendants move to dismiss this diversity action on the ground of *forum non conveniens.* For the reasons stated below, the motion is granted.[1]

### Facts

Plaintiff's mother, Stephanie Ledingham, is a citizen and resident of Canada. She alleges that she ingested the drug DILANTIN during and prior to her pregnancy in 1969–1970. Her son, Philip David, was born with serious birth defects, including a cleft palate, an inner-ear malformity, and a congenital heart defect.

In a complaint sounding in negligence, breach of warranty and strict liability, plaintiff seeks both compensatory and punitive damages.

Defendant Warner-Lambert Company ("Warner-Lambert") is a Delaware corporation with its principal place of business in New Jersey. Defendant Parke, Davis & Company ("Parke, Davis"), a wholly-owned subsidiary of Warner-Lambert, is a Michigan corporation with its principal place of

1. Both sides have also moved for summary judgment on other grounds. In light of my disposition of the action, however, I need not decide the motion.

business in New Jersey. Defendant Parke-Davis Division of Warner-Lambert Company is an operating division of Warner-Lambert having no separate and distinct corporate identity.

DILANTIN is an anti-convulsant drug, first marketed, sold and distributed in the United States by Parke, Davis in 1938. Defendants claim, however, that the DILANTIN ingested by Mrs. Ledingham was manufactured, packaged, advertised, promoted and marketed by Parke Davis Canada, Inc., a separate and independent corporation organized under the laws of Canada. Moreover, the drug was prescribed to plaintiff by Canadian physicians, dispensed at Canadian pharmacies and ingested in Canada. Finally, the manifestation and treatment of the infant's injuries occurred there. Defendants argue, accordingly, that this Court should dismiss the complaint since Canada provides a more convenient forum for the litigation.

Plaintiff argues, however, that the allegedly tortious conduct complained of arises neither from the manufacture nor the administration of the drug, but from defendants' decision to place the drug in the stream of commerce with knowledge that the accompanying warnings were inadequate. Thus, since the original development and testing of the drugs and, perhaps, the alleged withholding of adequate warnings, occurred in this country, plaintiff argues that defendants' *forum non conveniens* motion should be denied.

### Discussion

■ The doctrine of *forum non conveniens* allows a court, in its discretion, to "resist imposition upon its jurisdiction" even though jurisdiction and venue are technically proper, if it appears that the convenience of the parties and the ends of justice warrant dismissal. *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 507, 67 S.Ct. 839, 842, 91 L.Ed. 1055 (1947). *See Koster v. Lumbermens Mut. Cas. Co.,* 330 U.S. 518, 527, 67 S.Ct. 828, 833, 91 L.Ed. 1067 (1947). The Supreme Court has described the appropriate inquiry.

■ Initially, the Court must determine whether there is, in fact, an alternative forum. *Piper Aircraft v. Reyno,* 454 U.S. 235, 254 n. 22, 102 S.Ct. 252, 265 n. 22, 70 L.Ed.2d 419 (1981). Once the existence of an alternative forum is established, the court must balance the public and private interests at stake in assessing the relative convenience of the forum chosen by plaintiff as compared to the available alternative forum. *Gulf Oil v. Gilbert, supra,* 330 U.S. at 507–08, 67 S.Ct. at 842–43. Although traditionally there is a presumption in favor of the plaintiff's choice of forum, defendants' burden of showing inconvenience to rebut the presumption is less stringent where, as here, the plaintiff is a foreign citizen. *See Piper Aircraft v. Reyno, supra,* 454 U.S. at 255–56, 102 S.Ct. at 265–66.

### A. Availability of an Alternative Forum

Defendants maintain that the courts of Ontario, Canada provide a suitable alternative forum for this case. Indeed, defendants have offered to consent to suit by plaintiff in the courts of Canada as a condition for dismissal.

Defendants, moreover, have provided the Court with an affidavit from Alan J. Lenczner, a barrister in Ontario, who opines that plaintiff could bring her claim in a Canadian court on theories of (a) negligence, (b) failure to warn of an inherent danger in the use of a product, and (c) breach of an implied warranty of merchantability. *See* Lenczner Affidavit at ¶ 15. Barrister Lenczner informs the Court, however, that the Canadian courts (a) do not recognize a claim of strict products liability, (b) do not permit the representation of clients on a contingency fee basis, and (c) impose a $180,000 upper limit on the recovery of non-pecuniary general damages. *Id.* at ¶ 16—¶ 20.

Faced with similar considerations, the Supreme Court held that the possibility that the law of the alternative forum will be less favorable to the plaintiff, while a factor, is not sufficient, alone, to bar dis-

missal on the ground of *forum non conveniens*. *See Piper Aircraft v. Reyno, supra*, 454 U.S. at 247, 102 S.Ct. at 261. The Court went on to state that:

> [I]f the remedy provided by the alternative forum is so clearly inadequate or unsatisfactory that it is no remedy at all, the unfavorable change in law may be given substantial weight; the district court may conclude that dismissal would not be in the interests of justice.

*Id.* at 254, 102 S.Ct. at 265. *See Dowling v. Richardson-Merrell, Inc.*, 727 F.2d 608, 613 (6th Cir.1984).

 Thus, although plaintiff's potential damage award may be smaller in Canada, and although litigation there might be more expensive and more difficult, the Court finds that there is no danger that plaintiff will be deprived of a remedy or treated unfairly there. *See Dowling v. Richardson-Merrell, Inc., supra*, 727 F.2d at 615. Having concluded that the courts of Canada provide an adequate alternative forum for this litigation, I turn to the *Gulf Oil v. Gilbert* balancing test.

**B.** *The Balancing of the Public and Private Interests at Stake*

The Supreme Court in *Gulf Oil v. Gilbert* laid out the factors that a court must consider in balancing the public and private interests at stake in a *forum non conveniens* determination. That test was summarized as follows in *Piper Aircraft v. Reyno:*

> The factors pertaining to the private interests of the litigants included the "relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive." The public factors bearing on the question included the administrative difficulties flowing from court congestion; the "local interest in having localized controversies decided at

home"; the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action; the avoidance of unnecessary problems in conflict of laws, or in the application of foreign law; and the unfairness of burdening citizens in an unrelated forum with jury duty.

454 U.S. at 241 n. 6, 102 S.Ct. at 258 n. 6 (citations omitted).

**1.** *The Private Interests*

Defendants contend that the bulk of the evidence relevant to this case is located in Canada since that is where the drug was manufactured, marketed, prescribed, and ingested, and since that is where the mother and her son reside. Plaintiff responds, on the other hand, that the records and witnesses pertaining to the testing and development of the drug and the defendants' failure to warn of its hazardous side effects are located in the United States.

Although, admittedly, the proof with respect to the issue of liability may be located in both countries, I conclude that access to evidence will be facilitated, and the convenience of witnesses and parties furthered, if this case is tried in Canada.

Significantly, those records and witnesses located in the United States are, for the most part, within defendants' exclusive control, and thus, can be inexpensively and easily produced. Indeed, this Court will condition the dismissal upon the defendants' agreement to provide the records relevant to plaintiff's claims. *See Piper Aircraft v. Reyno, supra*, 454 U.S. at 257–58 n. 25, 102 S.Ct. at 266–67 n. 25.

Clearly, however, the vast majority of evidence relating to the causation and damages elements of plaintiff's claims is located in Canada. *Cf. Harrison v. Wyeth Laboratories*, 510 F.Supp. 1, 8 (E.D.Pa.1980), *aff'd*, 676 F.2d 685 (3d Cir.1982); *Jones v. Searle Laboratories*, 93 Ill.2d 366, 67 Ill. Dec. 118, 121–22, 444 N.E.2d 157, 160–61 (1983). Indeed, defendants have identified numerous physicians, pharmacists, hospitals, and therapists involved in either the prescription or administration of the drug

or the treatment of the child's condition.[2] If these witnesses are unwilling to testify before this Court, there is no compulsory process that can issue from this Court to secure their attendance. *Jones v. Searle Laboratories, supra,* 67 Ill.Dec. at 122, 444 N.E.2d at 161. Although defendants could depose the witnesses in Canada, depositions are an inadequate substitute for live testimony. *Gulf Oil v. Gilbert, supra,* 330 U.S. at 511, 67 S.Ct. at 844.

Moreover, even assuming that the medical witnesses are willing to testify, the costs of producing them in New York would be substantial. *Cf. Jones v. Searle Laboratories, supra,* 67 Ill.Dec. at 122, 444 N.E.2d at 161. In comparison, those witnesses located in this country are, for the most part, employees of the defendants, and thus, may be produced at little expense.

Finally, defendants have advised the Court of their intention to implead plaintiff's treating and prescribing physicians. However, there is nothing in the record to suggest that any of these Canadian physicians is subject to the jurisdiction of a New York court. Thus, in all likelihood, if the case is tried in New York, the defendants will be forced to undergo the burdensome procedure of commencing separate actions for indemnity or contribution in Canada. This factor weighs in favor of dismissal. *See Piper Aircraft v. Reyno,* 454 U.S. at 259, 102 S.Ct. at 267.

Thus, as long as plaintiff's access to the design and testing records is assured, as it will be by the conditions placed on dismissal, the private interests of the parties will be well served by trial in Canada, as all other evidence relating to the action is located there.

### 2. The Public Interests

Analysis of the public interests prong of the *Gilbert* test leaves little doubt that this case would be better tried in Canada. Clearly, the local interest in deciding this case is minimal.

Plaintiff argues that this Court has an interest in preventing wrongs from occurring as the result of unsafe prescription drugs that are developed, and for which warnings are formulated within this country. *Cf. Lake v. Richardson-Merrell, Inc.,* 538 F.Supp. 262, 275 (N.D.Ohio 1982). Clearly, however, when a regulated industry, such as the pharmaceutical industry, is involved in an action, the country where the injury occurs has a particularly strong interest in the litigation. *Dowling v. Richardson-Merrell, supra,* 727 F.2d at 616. Indeed, several courts faced with similar claims have decided that the more convenient forum lies in the country where the drugs were manufactured, marketed, prescribed and ingested. *See, e.g., id.; Purser v. American Home Products Corp.,* 80 Civ. No. 710 (S.D.N.Y. Jan. 30, 1981) (Cannella, J.); *Harrison v. Wyeth Laboratories, supra,* 510 F.Supp. at 4, 8; *Bewers v. American Home Products Corp.,* 99 A.D.2d 949, 472 N.Y.S.2d 637, 639 (1st Dep't 1984).

As one court noted:

Questions as to the *safety* of drugs marketed in a foreign country are properly the concern of that country; the courts of the United States are ill-equipped to set a standard of products safety for drugs sold in other countries. The issues raised here concern the knowledge, if any, of an allegedly unreasonable risk, and the sufficiency of the warning of that risk to users of the product. Both the [Canadian] and the American governments have established requirements as to the standards of safety for drugs and the adequacy of any warnings to be given in connection with its use. Each government must weigh the merits of permitting the drug's use and the necessity of requiring a warning.... The

---

**2.** Plaintiff argues that the defendants have not specified which of these witnesses will be needed for the trial. However, defendants need not detail all the witnesses likely to be called in order to establish inconvenience. Rather, they

need only provide enough information to enable the Court to balance the parties' interests. *Piper Aircraft v. Reyno, supra,* 454 U.S. at 258–59, 102 S.Ct. at 267–68. Clearly, defendants have met their burden.

United States should not impose its own view of the safety, warning, and duty of care required of drugs sold in the United States upon a foreign country when those same drugs are sold in that country.

*Harrison v. Wyeth Laboratories,* 510 F.Supp. at 4.

Moreover, it would be manifestly unfair to the defendants, who claim to have complied with Canadian regulations, if this Court were to set a higher standard of care than is required by the Canadian government. *Id.* at 5. Accordingly, I find that Canada's interest in having this localized controversy decided at home is strong.

Significantly, an analysis of the law that would apply also points to Canada as the appropriate forum. A federal court sitting in a diversity case must apply the choice of law rules of the forum state. *Klaxon Co. v. Stentor Electric Manufacturing Co.,* 313 U.S. 487, 496, 61 S.Ct. 1020, 1021, 85 L.Ed. 1477 (1941). Under New York law, the Court must apply "the law of the jurisdiction which, because of its relationship or contact with the occurence or the parties, has the greatest concern with the specific issue raised in the litigation." *Loebig v. Larucci,* 572 F.2d 81, 84 (2d Cir.1978) (quoting *Babcock v. Jackson,* 12 N.Y.2d 473, 481, 240 N.Y.S.2d 743, 749, 191 N.E.2d 279, 283 (1963)).

Plaintiff argues that the design and marketing decisions were made in New Jersey, and thus, that New Jersey law should govern the action. Even assuming that these decisions were made by defendants in New Jersey, however, it is clear that Canadian law must apply, since the application of New Jersey law "would displace the regulatory scheme that the [Canadian] government has decided is in the best interests of its citizens." [3] *Purser v. American Home Products, supra,* slip op. at 8. *Cf. Bewers v. American Home Products, supra,* 472 N.Y.S.2d at 639. This Court's unfamiliarity with Canadian law supports dismissal of the action on the basis of *forum non conveniens.* *See Piper Aircraft v. Reyno, supra,* 454 U.S. at 260, 102 S.Ct. at 268.

Finally, although administrative difficulties, such as calendar congestion and juror allocation, are, perhaps, the least significant factors in the calculus, they nonetheless merit consideration. *See Gulf Oil v. Gilbert, supra,* 330 U.S. at 508–09, 67 S.Ct. at 8. Clearly, the public has an interest in avoiding further congestion of the court's calendar when there exists a more convenient forum for the action. *See Fraizer v. St. Jude Medical, Inc.,* 609 F.Supp. 1129, 1132 (D.Minn.1985). In this case, the Court finds no justification for the imposition of jury duty upon residents of a community having no connection with the litigation.

### Conclusion

Defendants' motion to dismiss the complaint is granted, subject to the following conditions:

1. that defendants consent to suit and acceptance of process in any suit plaintiff files in Canada on the claims that are the subject of the instant suit;

2. that the appropriate forum in Canada accepts jurisdiction to hear the case [4];

3. that defendants agree to waive any statute of limitations defense acquired after the action was filed in this Court;

4. that defendants agree to make available, at their own expense, any doc-

---

**3.** Plaintiff also argues that defendants should be collaterally estopped from relitigating issues relating to defendants' failure to adequately test the drug and warn of its dangerous side effects, since those issues were resolved against the defendants in a prior action in this district. *See Alboher v. Parke-Davis Division of Warner-Lambert Company,* Civ. No. 80–0046 (E.D.N.Y.1984) (Nickerson, J.). However, that case was decided under New York law. In light of my ruling that this case is governed by Canadian law, it is

clear that the two cases do not involve identical issues, and thus, that the *Alboher* judgment cannot be given preclusive effect in this action. *Cf. Feniello v. University of Pennsylvania Hospital,* 558 F.Supp. 1365, 1367 (D.N.J.1983).

**4.** If the Canadian courts do not accept jurisdiction, this Court will entertain plaintiff's request to transfer the case to the United States District Court in New Jersey.

uments, records or witnesses within their control that are needed for the fair adjudication of the plaintiff's claims in Canada;

5. that the defendants advise the Court and the plaintiff of their consent to these conditions within thirty days of the date of this Order.

Defendants' request for attorney fees is denied.

SO ORDERED.