Ame FLYNN, individually and as Executrix of the Last Will and Testament of Thomas Flynn, Plaintiff,

v.

GENERAL MOTORS, INC., Defendant.

No. 89 CV 2151(JMM).

United States District Court,
E.D. New York.

Jan. 24, 1992.

Harold M. Hershman, Hershman & Leicher, P.C., New York City, for plaintiff.

Edward L. Birnbaum, Jeffrey L. Chase, Michael B. Gallub, Herzfeld & Rubin, P.C., New York City, for defendant.

## ORDER

McLAUGHLIN, Circuit Judge.*

Defendant moves to dismiss on the ground of *forum non conveniens.* The Court has conducted a *de novo* review of the record, including defendant's objections to the Report and Recommendation, and hereby adopts the annexed Report and Recommendation of Chief Magistrate Judge A. Simon Chrein.

Defendant has not sustained its burden of showing that the balance of conveniences *strongly* favors dismissal. *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508, 67 S.Ct. 839, 843, 91 L.Ed. 1055 (1947). Defendant has not persuaded the Court that the physical evidence in Tobago is either crucial—the car's roof concededly has been buried under several tons of garbage for years—or unobtainable. Furthermore, defendant has not convinced the Court that the thirty or so witnesses in Tobago are either material or unwilling to testify in the United States.

Because the Court agrees with Magistrate Chrein's analysis of the public and private interest factors involved in this case, defendant's motion to dismiss is denied.

SO ORDERED.

* Sitting by designation.

## REPORT AND RECOMMENDATION

A. SIMON CHREIN, United States Magistrate Judge.

This matter was referred to the undersigned by the Honorable Joseph M. McLaughlin for a report and recommendation on defendant's motion to dismiss this case on the grounds of *forum non conveniens*. For the reasons stated below, it is respectfully recommended that the motion be denied.

## I. FACTUAL BACKGROUND

This lawsuit arises out of an automobile accident in Trinidad and Tobago, a nation comprised of two islands located off the Venezuelan coast. *Affidavit of Jeffrey L. Chase, Dated February 7, 1990*, at ¶ 1 (hereinafter, *Chase Affidavit*). Plaintiff, Ame Flynn, individually and in her capacity as executrix of the last will and testament of her husband, Thomas Flynn, commenced this action in Supreme Court, New York County on April 10, 1989. *Affidavit of Harold M. Hershman, Dated March 8, 1990*, at ¶ 13. (hereinafter, *Hershman Affidavit*). Defendant, General Motors, Inc. (GM), then successfully removed the case to federal court in the Eastern District of New York. *Id.* at ¶ 14.

The accident which forms the basis for this suit occurred on April 11, 1986. *Id.* at ¶ 4. Ame and Thomas Flynn (the Flynns), who were New York residents at the time, had just arrived in Trinidad and Tobago for a vacation. *Id.* The Flynns and another couple, Roger and Elizabeth Schmidt (the Schmidts), entered a 1982 Chevrolet Impala taxi-cab at the airport requesting transportation to their hotel. *Plaintiff's Memorandum of Law in Opposition to Defendant's Motion to Dismiss for Forum Non Conveniens*, at 3. (hereinafter, *Plaintiff's Memorandum*).

As the automobile proceeded to the hotel, two runaway horses appeared in the roadway. *Chase Affidavit*, at ¶ 12. The horses ran towards the car. The driver pulled to the side of the road and stopped the vehicle. The horses, however, did not come to a halt. They struck the vehicle. After

impact, one of the horses was thrown onto the roof of the car, collapsing the structure, and compromising the passenger compartment of the vehicle. *Id.*

Thomas Flynn suffered a fractured neck and C–3 quadriplegia. *Hershman Affidavit*, at ¶ 6. He was rushed to Scarboro County Hospital in Tobago. After initial treatment, he was then sent to Port of Spain General Hospital in Trinidad. *Id.* He was hospitalized in Trinidad and Tobago for a total of five (5) days. *Id.* at ¶ 6, 7. Thomas Flynn was then transported back to the United States. He received regular medical treatment in the United States for the next year and a half. On October 30, 1987, Thomas Flynn died. *Id.* at ¶ 7.

This lawsuit puts in issue the "crashworthiness" of the 1982 Chevrolet Impala taxi-cab. *Chase Affidavit*, at ¶ 15. After successfully removing the case from state court, GM now moves for dismissal on *forum non conveniens* grounds. *Id.* at ¶ 20.

Defendant asserts that Trinidad and Tobago is the most appropriate forum for this case. GM claims that the court system in Trinidad and Tobago would afford the plaintiff an opportunity to be heard and would award a recovery for injuries suffered due to defective products. *See Affidavit of Mark J. Morgan* (exhibit A to *Chase Affidavit*). GM also asserts that the accident occurred in Tobago and numerous possible witnesses reside in Trinidad and Tobago. *Memorandum of Law of Defendant General Motors Corporation ("GM") in Further Support of Motion to Dismiss on the Grounds of Forum Non Conveniens*, at 10–13 (hereinafter, *Defendant's Brief in Further Support*). Further, much of the physical evidence of the accident can be found in Tobago. *Id.* at 13.

Plaintiff, in opposition to the motion, avers that she and the Schmidts (all passengers in the 1982 Impala) reside in the northeastern United States. *Hershman Affidavit*, at ¶ 10, 11. Further, plaintiff alleges that she and the decedent were residents of New York at the time of the accident. *Id.* at ¶ 4. Finally, since this case involves alleged design defects, plaintiff asserts that all design and manufactur-

·ing facilities, information and experts are located within the United States. *Id.* at ¶ 21.

## II.  DISCUSSION

■ The doctrine of *forum non conveniens* allows a court to refrain from exercising its jurisdiction over a case even though such jurisdiction is technically proper. *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 507, 67 S.Ct. 839, 842, 91 L.Ed. 1055 (1947) (hereinafter, *Gulf Oil*). To properly forego hearing a case, the court must determine that a dismissal would best serve the parties and the interests of justice. *Ledingham v. Parke–Davis Div. of Warner–Lambert Co.,* 628 F.Supp. 1447, 1449 (E.D.N.Y.1986) (citing *Gulf Oil,* 330 U.S. 501, 67 S.Ct. 839, and *Koster v. Lumbermens Mut. Cas. Co.,* 330 U.S. 518, 527, 67 S.Ct. 828, 833, 91 L.Ed. 1067 (1947) (hereinafter, *Koster*)). Such a determination requires that an American citizen's complaint not be dismissed on *forum non conveniens* grounds unless there is a showing by the defendant that trial in the United States would be unjust, oppressive, or vexatious, and not merely inconvenient. *See Koster,* 330 U.S. at 524, 67 S.Ct. at 831; *Ionescu v. E.F. Hutton Co. (France) S.A.,* 465 F.Supp. 139, 145 (S.D.N.Y.1979).

■ Essentially, then, a motion for *forum non conveniens* is a balancing of conveniences between the parties. *Koster,* 330 U.S. at 524, 67 S.Ct. at 831. In this instance, GM bears a substantial burden to prove that the case should be dismissed. As the Supreme Court has stated, "... In any balancing of conveniences, a real showing of convenience by a plaintiff who has sued in his home forum will normally outweigh the inconvenience the defendant may have shown." *Id.* 330 U.S. at 524, 67 S.Ct. at 832. This burden becomes more resolutely fixed when the case involves a United States resident plaintiff who chooses his home forum. *See, Piper Aircraft Co. v. Reyno,* 454 U.S. 235, 255–56, 102 S.Ct. 252, 265–66, 70 L.Ed.2d 419 (1981) (hereinafter, *Piper Aircraft*).

■ The plaintiff's United States citizenship and residence, therefore, are factors weighing significantly against a *forum non conveniens* dismissal. *Walpex Trading Co. v. Yacimientos Petroliferos Fiscales Bolivanos,* 712 F.Supp. 383, 393 (S.D.N.Y.1989) (hereinafter, *Walpex Trading*). Although a plaintiff's residence and citizenship are not to be given "talismanic" effects (*Alcoa S.S., Co. v. M/V Nordic Regent,* 654 F.2d 147, 154 (2d Cir.1981) (en banc) *cert. denied* 449 U.S. 890, 101 S.Ct. 248, 66 L.Ed.2d 116 (1980) *reh'g denied* 449 U.S. 1103, 101 S.Ct. 902, 66 L.Ed.2d 831, *reh'g denied* 450 U.S. 1050, 101 S.Ct. 1772, 68 L.Ed.2d 247 (1981)) neither are they to be completely stripped of their significance. *Fiacco v. United Technologies Corp.* 524 F.Supp. 858, 861 n. 6 (S.D.N.Y.1981). They remain a factor which "augments ... the weight which normally would be given to the plaintiff's choice of forum." *Id.* at 861.

### A.  *Adequacy of the Alternative Forum*

■ A prerequisite to moving for a dismissal pursuant to *forum non conveniens* is the existence of a satisfactory alternative forum. *Schertenleib v. Traum,* 589 F.2d 1156, 1160 (2d Cir.1978) (citing *Gulf Oil,* 330 U.S. at 504, 67 S.Ct. at 840). In order for alternative forums to exist, both forums must have jurisdiction over the subject matter and parties in the suit. *Pain v. United Technologies Corp.,* 637 F.2d 775, 783 (D.C.Cir.1980) (hereinafter, *Pain*) The adequacy of a foreign forum then turns on the soundness and procedural fairness of that society's court system. *Murty v. Aga Khan,* 92 F.R.D. 478, 482 (E.D.N.Y.1981) (hereinafter *Murty*). In the present case, the parties dispute the adequacy of Trinidad and Tobago as an adequate alternative forum.

■ The defendant asserts that the courts of Trinidad and Tobago recognize the propriety of a recovery for injuries suffered from defective products, and will provide the plaintiff with an opportunity to be heard. *Memorandum of Law of Defendant General Motors Corporation ("GM") in Support of Motion to Dismiss on the Grounds of Forum Non Conveniens,* at 5 (hereinafter "*Defendant's Brief*"). GM also relies on the fact that at the time this

motion was made, the plaintiff was involved in related litigation in Trinidad and Tobago seeking redress from parties directly involved in the accident. *Id.* GM claims that by so doing, plaintiff has tacitly confirmed the adequacy of that forum. *Id.* at 4.

The plaintiff, on the other hand, asserts that the forum is inadequate. Plaintiff relies on the fact that Trinidad and Tobago's courts do not provide jury trials in civil cases. *Plaintiff's Memorandum,* at 15–16. Further, Flynn avers that Trinidad and Tobago's courts would not have jurisdiction over the defendant, but for GM's willingness to subject itself to such jurisdiction. *Hershman Affidavit,* at ¶ 24.

None of plaintiff's arguments support a finding that the courts of Trinidad and Tobago are an inadequate forum for this case. Plaintiff has failed to show that the Trinidad and Tobago judicial system lacks appropriate procedural safeguards. *Murty,* 92 F.R.D. at 482 (E.D.N.Y.1981). In fact, the plaintiff fails to show any "inadequacy" other than Trinidad and Tobago courts may be less favorable to the Flynns' case. Such a showing is insufficient to defeat a motion for *forum non conveniens* dismissal. *Piper Aircraft,* 454 U.S. at 247, 102 S.Ct. at 261.

Absent a showing of inadequate procedural safeguards, principles of comity preclude characterizing the judicial system of Trinidad and Tobago as any less fair than our own. *Murty,* 92 F.R.D. at 482. Therefore, the courts of Trinidad and Tobago do provide an adequate forum and the defendant meets its initial burden in moving for a *forum non conveniens* dismissal.

## B. *Factors to be Considered*

■ The mere fact that a satisfactory alternative forum exists does not preclude a federal court from hearing a case within its jurisdictional reach. *See Pain,* 637 F.2d at 783. Rather, several factors should be considered in resolving a *forum non conveniens* motion. These factors can be divided into two distinct categories: private interests of the parties and the interest of the public at large. *Gulf Oil,* 330 U.S. at 508, 67 S.Ct. at 843.

### 1. Private Factors

■ There are numerous private factors which a court may consider in a *forum non conveniens* motion. These factors include the relative ease of access to evidence, the availability of subpoena power, the cost of obtaining the attendance of witnesses, any practical problems associated with the litigation and trial proceedings, the possibility of reviewing the location of the accident, administrative difficulties, remoteness of the forum from location of the accident, and the forum court's need to apply foreign law. *Gulf Oil* at 508, 67 S.Ct. at 843; *Hasakis v. Trade Bulkers, Inc.,* 690 F.Supp. 260, 262 (S.D.N.Y.1988); *Abouchalache v. Hilton Int'l Co.,* 464 F.Supp. 94, 96 (S.D.N.Y.1978) *aff'd without op., Collins v. Hilton International Co.,* 628 F.2d 1344 (2d Cir.1980) (hereinafter, *Abouchalache* ).

This case is a products liability suit. Therefore, much of the necessary evidence plaintiff would need to prove his case is documentary. This evidence would most likely consist of evidence regarding the design, manufacture and testing of the automobile. *See Fiacco,* 524 F.Supp. at 861; and *Pain,* 637 F.2d at 787. The allegedly defective automobile was manufactured by General Motors, Inc., a Delaware corporation with its principal place of business in Michigan. Plaintiff has shown that the sites of the design, manufacture, testing and production of this 1982 Chevrolet Impala are within the United States. All records relevant to the design and manufacture of this car are also located in the United States. *See Hershman Affidavit,* at ¶ 19. Presumably, most of the evidence which the defendant would offer would be those same documents. *See Fiacco,* 524 F.Supp. at 861.

Plaintiff has also shown that the vast majority of medical records for Thomas Flynn are located in the United States. *Hershman Affidavit,* at ¶ 8. Although he was initially treated in hospitals in Trinidad and Tobago, Mr. Flynn spent the last year and a half of his life in the care of a hospital in the United States. *Id.* To the

extent that the hospital records in Trinidad and Tobago are relevant, they can be obtained through less burdensome means than holding trial in that forum.

GM argues that much of the physical evidence of the accident itself is available in Trinidad and Tobago. This physical evidence consists of the original roof to the taxicab, which may be recovered from a landfill, the subsequently repaired automobile itself, and the skeleton of the horse that crushed the roof of the car. *Defendant's Brief,* at 10. The evidentiary value of each of these is minimal in this type of case. To the extent that these items would be relevant such evidence can be reduced to documentary form.

Defendant stresses that numerous witnesses to the accident are not within the subpoena power of this court. GM argues that these witnesses are amenable to subpoena in Trinidad and Tobago. *Id.* at 14. The witnesses to whom GM refers include various persons who arrived at the scene, ambulance, fire, and police personnel, the caretaker of the Courland Estate, and garage employees. *Id.* at 10–14. It is not apparent, however, that any of these persons will be key witnesses in a case based on design and manufacturing defects. *See Walpex Trading,* 712 F.Supp. at 393. Furthermore, the defendant has not shown that deposition procedures are unavailable to examine these witnesses; nor has GM produced any evidence tending to show that the witnesses in question would be unwilling or unable to testify or be deposed. *Id.* at 393.

Plaintiff has shown that she and the Schmidts live in the northeastern United States. *Hershman Affidavit,* at ¶ 10, 11. These persons were in the car at the time of the accident and are currently subject to the subpoena power of this court. *Id.*

Further, all experts on the pertinent issues of design and manufacture can be found within the United States. In fact, the plaintiff has retained the services of Dr. Nicholas Perrone as an expert witness to assist in this action. *Hershman Affidavit,* at ¶ 26. There is doubt that expert witnesses could be found within Trinidad and Tobago to testify as to the crashworthiness of the automobile in question. *See Id.* at ¶ 27.

Defendant also asserts that its inability to implead third parties if the case were heard in this forum weighs against retaining jurisdiction. *Defendant's Brief,* at 15. Although it is true that "… the inability to implead other parties directly involved in the controversy … weighs against retention of jurisdiction …" (*Fitzgerald v. Texaco, Inc.,* 521 F.2d 448, 453 (2d Cir.1975), *cert. denied* 423 U.S. 1052, 96 S.Ct. 781, 46 L.Ed.2d 641 (1976)), such inability does not dictate dismissal. *American Special Risk Ins. Co. v. Delta America Ins. Co.,* 634 F.Supp. 112, 118 (S.D.N.Y.1986).

Finally, GM asserts that the laws of Trinidad and Tobago will control in this case. The defendant bases this solely on the fact that the accident occurred in Tobago. *Defendant's Brief,* at 19. Initially, it should be recognized that New York has adopted a governmental interest analysis to apply to choice of law issues. Under such an analysis, the doctrine of *lex loci delicti* is given its due accord. *Cousins v. Instrument Flyers, Inc.,* 44 N.Y.2d 698, 699, 405 N.Y.S.2d 441, 376 N.E.2d 914 (1978). However, a governmental interest analysis does not merely mechanically assign to a case the law of the jurisdiction in which the underlying accident occurred. Rather an analysis is made to determine which jurisdiction has a greater "governmental interest" in the case.

Hence, it is not immediately clear which forum's law will apply; nor is it necessary to determine this issue at this time. Even assuming that Trinidad and Tobago law applies, it is well settled that the application of foreign law is not in itself a reason to dismiss under *forum non conveniens. Shipping Corp. of India Ltd. v. American Bureau of Shipping,* 603 F.Supp. 801, 806 (S.D.N.Y.1985); *Walpex Trading,* 712 F.Supp. at 393; *Olympic Corp. v. Societe Generale,* 462 F.2d 376, 379 (2d Cir.1972).

The severe inconvenience and prejudice which plaintiff would incur if it were forced to litigate in Trinidad and Tobago cannot be overlooked. The financial resources of each party also play a role in determining the *forum non conveniens* motion. Con-

sidering all practical problems including the remoteness of Trinidad and Tobago, it appears that the defendant is much more capable of effectively defending this suit in New York than the plaintiff is in seeking redress in Trinidad and Tobago. *Manu Int'l, S.A. v. Avon Products, Inc.*, 641 F.2d 62, 67 (2d Cir.1981); *Walpex Trading*, 712 F.Supp. at 393; *McGovern v. Blaha*, 496 F.Supp. 964, 965 (W.D.N.Y.1980).

### 2. Public Factors

■ In analyzing the public interests at stake in determining whether to dismiss a case under *forum non conveniens*, the court must consider: the local interest in the controversy; administrative difficulties caused by congestion of local court dockets; the avoidance of unnecessary problems in choice of law and application of foreign laws; and the imposition of jury duty on residents of a jurisdiction having little relation to the controversy. *Shields v. Mi Ryung Constr. Co.*, 508 F.Supp. 891, 893 (S.D.N.Y.1981) (citing *Gulf Oil*, 330 U.S. at 508–09, 67 S.Ct. at 843).

GM argues that since the plaintiff is currently involved in related litigation in Trinidad and Tobago, it would be manifestly unfair to allow plaintiff to "split" this cause of action, thus requiring GM, a Delaware Corporation whose principal place of business is Michigan, to defend this suit in New York City. *Defendant's Brief in Further Support*, at 22.

I have considered this position and weighed its implications. There is a fundamental and pragmatic goal in law to preserve judicial resources by hearing all related litigation together. Sometimes this is just not possible. In this case, the plaintiff has a viable cause of action against the Trinidad and Tobago defendants. She had no choice but to seek redress in that foreign forum against those defendants. She should not now be penalized for pursuing a remedy against those defendants. Even though an American citizen does not enjoy an absolute right to sue in an American court (*Abouchalache*, 464 F.Supp. at 97), it seems patently unfair to force an American citizen suing an American corporation for alleged design flaws in an American built automobile to seek redress outside the United States.

This case is one in which the community bears an interest in the controversy. Thus the community has not had "the duties and expenses of jury trial" foisted upon it. *Fiacco*, 524 F.Supp. at 861. Rather, the "community served by this court has a clear interest in providing a forum in which one of its citizens may seek to redress a wrong." *Id.* The public therefore has an interest in hearing this case in this forum.

### III. CONCLUSION

There is a strong presumption in favor of plaintiff's choice of forum, which may be overcome only when the private and public interest factors "clearly point towards trial in the alternative forum." *Piper Aircraft*, 454 U.S. at 255, 102 S.Ct. at 266. GM has not made that showing.

Therefore, it is respectfully recommended that the defendant's motion for dismissal under *forum non conveniens* be denied. No objections to the recommendations contained in this report will be entertained unless filed with the Honorable Joseph M. McLaughlin on or before October 21, 1991.

Dated: Brooklyn, New York

October 8, 1991.